UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
PROVIDENT HEALTHCARE PARTNERS, LLC,  :
:
Plaintiff,  :
: 06 Civ. 5789 (GEL)
-v-  :
: **OPINION AND ORDER**
:
AMERICAN VETERINARY SUPPLY CORP.,  :
:
Defendant.  :
:
------------------------------------------------------------x

Alan D. Zuckerbrod, Siller Wilk LLP,
New York, NY, for plaintiff.

James M. Wicks and Aaron E. Zerykier,
Farrell Fritz, P.C., Uniondale, NY, for
defendant.

GERARD E. LYNCH, District Judge:

      Plaintiff Provident Healthcare Partners, LLC ("Provident") was retained under a brokerage contract to assist defendant American Veterinary Supply Corp. ("American") in the sale of all or part of American's business.  Some time after American terminated the relationship, as it was entitled to do, American sold one of its divisions to a company that Provident had earlier contacted on American's behalf.  Provident brings this action, claiming entitlement to a commission.  American moves to dismiss, and Provident cross-moves for summary judgment.  American's motion will be granted in part and denied in part; Provident's motion will be denied.

## BACKGROUND

The facts below are taken from Provident's complaint, the allegations of which are presumed to be true for purposes of American's motion, and from the text of documents incorporated in or relied on by the complaint, which the Court can consider for purposes of a motion to dismiss, see Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999), and which in any event are provided by Provident in connection with its summary judgment motion.

On or about February 28, 2005, Provident and American entered a Transaction Engagement Agreement (the "Agreement"), under which Provident agreed to act as a financial advisor to American in connection with the projected sale of some or all of American's divisions or affiliates, in return for a specified commission should a sale be consummated.  (Compl. ¶¶ 5-8.) The Agreement contained express terms relating to its termination.  Specifically, Section Six provides in relevant part:

> Term and Termination. This Agreement is effective from the date [American] signs below and, subject to the terms of this Agreement, expires one (1) year after said date (the "Termination Date").  Both [American] and Provident Healthcare shall have the right to terminate their obligations under this Agreement upon a thirty (30) day written notice to the other party(ies) hereto.  Upon either the expiration or termination of this Agreement, Provident Healthcare will furnish to [American] a list of Approved Prospective Partners that have been contacted with respect to a Transaction . . . .
>
> [American] will remain obligated to pay to Provident Healthcare the 6% Transaction Fee if [American] enters into a fully executed written agreement with respect to a transaction involving an Approved Prospective Partner . . . within six months (6 months) after the Termination Date.

(Ciardi Decl. Exh. A at 2-3; see Compl. ¶¶ 10-23.)

Thus, the Agreement provided that it would "expire[]" after a year, and also that both parties had a right to "terminate" the Agreement on 30 days' written notice.  The parties provided protection for Provident against the risk that American would utilize its services without paying for them, by providing that "[u]pon either the expiration or termination" of the Agreement, Provident would provide American with a list of potential buyers it had contacted, and that American would "remain obligated" to pay specified fees if American entered a transaction with any buyer thus listed within six months of the "Termination Date."

The parties differ on the meaning of "Termination Date" for purposes of this provision.  Provident notes that the very first sentence of Section Six provides that the Agreement will "expire[] one (1) year after [it is signed] (the 'Termination Date')," thus appearing to specifically define "Termination Date" for purposes of the Agreement as the date of one year after signing.  (See Compl. ¶¶ 10-13, 28; see also Pl. Mem. 5-6.)  American maintains that the term "Termination Date" must refer as well to any date on which one party "terminates" the Agreement, noting that this makes better business sense, and also conforms to the usage within Section Six referring to the Agreement as "expiring" on the "Termination Date," but as being "terminated" when one party invokes its right to break off the relationship.  (See D. Mem. in Supp. of Mot. to Dismiss 7-8.)

This difference in interpretation is significant, because as events transpired, American exercised its option to terminate the Agreement in early July 2005, received Provident's list of Approved Prospective Partners shortly thereafter, and concluded a purchase contract with a company on that list on or about April 26, 2006.  (See Compl. ¶¶ 18-24; Pl. Mem.3.)  Thus, under American's interpretation of the Agreement, no commission is due, because it concluded the purchase contract more than six months after the effective date of its termination of the

3

Agreement. Under Provident's interpretation, however, the purchase contract was concluded within six months of the "Termination Date," as defined in the contract to mean the one-year anniversary of the date on which the Agreement was signed.

Provident asserts claims for breach of contract and unjust enrichment based on American's failure to pay a commission. American moves dismiss the complaint, and Provident moves for summary judgment.

## DISCUSSION

I.    American's Motion to Dismiss

A motion to dismiss may only be granted when it "is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 71 (2d Cir. 2006), quoting Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002). American argues that the breach-of-contract claim fails under this standard because the Agreement can only be interpreted as providing for a commission on transactions completed within six months of a party's termination of the Agreement, and that the unjust enrichment claim fails because the subject matter of the claim is governed by a written contract.

With respect to the contract claim, American's motion is manifestly unsuccessful. American's interpretation of the contract is attractive as a matter of business reality. Under the terms of the Agreement, Provident is protected against losing its commission if American consummates a sale during a set amount of time after the Agreement comes to an end. (See Compl. Exh. 1.) It makes sense that the time period during which this protection exists should run from the end of Provident's efforts, whether by "expiration" or "termination." Section Six provides that the list of contacts is to be provided by Provident upon either method by which the

relationship may end, and it would make little sense that American could "terminate" the Agreement before its expiration, thus ending Provident's obligation to perform its duties under the Agreement, while retaining its own obligation to pay a commission not merely for a grace period after termination, but until six months after the one-year anniversary of the Agreement's signing.

Nevertheless, the language of the Agreement is hardly conclusive in favor of that interpretation, particularly in view of the fact that it specifically defines the one-year anniversary date as the "Termination Date," and then consistently uses the term "Termination Date" to refer to the date of the commencement of the six-month grace period during which American remains obligated to pay a commission. (See id. at 2-3.) A literal reading of this key provision appears to support precisely the interpretation that American maintains cannot reasonably be intended.

Thus, although American argues that the Agreement can have only one interpretation, a contrary interpretation reasonably appears on the very face of the document. On this record, it cannot be held that the Agreement unambiguously favors American's interpretation, such that Provident could prevail on no plausible state of facts. At best (from American's standpoint), the Agreement contains an ambiguity that could be resolved by extrinsic evidence.[1]

---

[1] American provides one piece of such evidence in the form of Provident's own letter responding to American's termination letter. In addition to providing the required list of contacts, Provident's letter asserts an entitlement to a commission if a transaction is concluded with a listed party "by February 5, 2006" (Zerykier Aff. Exh. B), a date consistent with American's interpretation of the Agreement, but not with the position that Provident now, having seen how events transpired, finds it convenient to adopt. A reasonable factfinder might well treat this as highly persuasive evidence of the parties' intent, since Provident appears to adopt a position less favorable to its own interests, at a time when neither party could know when, if ever, a sale might be concluded. But this evidence does not defeat Provident's contract claim as a matter of law. Perhaps the author of the letter simply made a mistake and misread the Agreement. This is an issue of fact that cannot be resolved on a motion to dismiss.

Moreover, as Provident points out, even if the Agreement is interpreted as American would wish, contracts in New York incorporate as a matter of law an obligation of good faith and fair dealing. See 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002). American concluded a written purchase only a couple of months after the end of the grace period as American calculates it, and Provident asserts that evidence exists that the purchase contract had in fact been negotiated at an earlier date. (Pl. Mem. 10.) If American actually reached agreement on the sale terms before expiration of the grace period, and deliberately and in bad faith delayed signing the document evidencing the contract until after the grace period ended, American could well be found to have breached the implied contractual duty of good faith. Since such a state of facts is consistent with Provident's pleadings, it cannot be said that the complaint fails to state a claim for breach of contract, even if American's interpretation of the Agreement is correct.

The case is otherwise, however, with respect to Provident's claim for unjust enrichment. Under New York law, to prevail on a claim of unjust enrichment, a "plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (citation and internal quotation marks omitted). However, it is well established in New York that the existence of an enforceable written contract precludes recovery for unjust enrichment. See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005); Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-89 (1987).

While the parties differ on the interpretation of the Agreement, neither side disputes that the Agreement is an enforceable written contract, by which the parties specifically negotiated a provision that covered the contingency in which Provident would be entitled to a commission.

6

There is thus no injustice from the mere fact that Provident's efforts were of use to American in concluding a sale if the sale was in good faith consummated at a time when, by the parties' express agreement, those efforts could no longer be regarded as producing the sale or entitling Providence to a fee. The parties specifically provided for a bright-line rule, under which Provident would be entitled to certain fees from a sale occurring during certain periods, and entitled to nothing from a sale occurring after the end of those periods. That the parties now disagree on where the line is located does not throw the matter back to some quasi-contractual equitable judgment; the disagreement simply requires that the Agreement be properly interpreted, after which Provident either will or will not be entitled to a fee, and not to recovery of an imprecise calculation of benefits unjustly conferred on American. American's motion will thus be granted with respect to the unjust enrichment claim.

II.     Provident's Summary Judgment Motion

What has already been said largely disposes of Provident's motion for summary judgment, which can only be granted if there are no genuine issues of material fact. See Healthcare Ass'n of N.Y. State, Inc. v. Pataki, 471 F.3d 87, 94 (2d Cir. 2006). Like American, Provident argues that the Agreement's provision is unambiguously clear; it merely finds it to have an unambiguously clear meaning that is the opposite of what American believes it to be. Provident's position, unlike American's, finds support in a literal reading of a key provision of the Agreement, at least when read in isolation. Since Section Six of the Agreement – the very section that defines the obligation to pay a commission even after termination of the Agreement – troubles to define the one-year expiration date as the "Termination Date," and then imposes an obligation to pay certain fees if defined events occur within six months of the "Termination Date," Provident's position has considerable appeal.

It cannot be said, however, that the contractual term is unambiguous as a matter of law, as the summary judgment standard requires. The provision's use of the terms "expiration" and "termination" is in some respects inconsistent with the literal definition of "Termination Date," and an interpretation that "Termination Date" refers to the date on which "termination" occurs is far from senseless as a matter either of language or of business sense. Under these circumstances, the correct understanding of the Agreement's meaning requires the exploration of extrinsic evidence, and becomes a matter of fact. Because no discovery has been had with respect to such extrinsic evidence, and because Provident's motion depends entirely on its facial reading of the contract, issues of fact remain, and summary judgment is not appropriate.

## CONCLUSION

For the foregoing reasons, American's motion for summary judgment is granted with respect to plaintiff's claim for unjust enrichment, and denied with respect to plaintiff's claim for breach of contract. Provident's motion for summary judgment is denied.

SO ORDERED.

Dated: New York, New York
      January 16, 2007

                                              _____
                                              GERARD E. LYNCH
                                              United States District Judge